UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARGILLE SONS and CARGILLE-SACHER LABORATORIES, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC and OCCIDENTAL PETROLEUM CORPORATION,<br><br>Defendants. | Civil Action No. _____<br><br>**<u>Civil Action</u>**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Cargille Sons and Cargille-Sacher Laboratories, Inc. (collectively "Plaintiffs"), by way of Complaint, hereby states:

**<u>PARTIES</u>**

1.     Plaintiff Cargille Sons ("Cargille Sons") is a New Jersey corporation with a business address of 55 Commerce Road, Cedar Grove, New Jersey, 07009 ("Subject Property"). Cargille Sons is the owner of the Subject Property.

2.     Plaintiff Cargille-Sacher Laboratories, Inc. ("Cargille Labs") is a New Jersey corporation with a business address of 55 Commerce Road, Cedar Grove, New Jersey, 07009. Cargille Labs is the tenant at the Subject Property.

3.     Upon information and belief, Defendant, Bridgestone Americas Tire Operations, LLC. ("Defendant Bridgestone"), is an active Delaware limited liability company with a business address of 535 Marriott Drive, Nashville, Tennessee 37214.

1

4.      Upon information and belief, Defendant, Occidental Petroleum Corporation ("Defendant Occidental"), is an active foreign corporation with a business address located in Dallas, Texas.

## VENUE AND JURISDICTION

5.      Pursuant to 28 U.S.C. 1331, this Court has original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

6.      Pursuant to 42 U.S.C. 9613(b), this Court has original jurisdiction over all controversies arising under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA").

7.      Pursuant to 28 U.S.C. 1367, this Court has supplemental jurisdiction over all other claims that are subject to the same case or controversy.

8.      Venue is proper in the District of New Jersey as the Subject Property at which the release and damage occurred is located in Cedar Grove, Essex County, State of New Jersey.

## GENERAL ALLEGATIONS

9.      Plaintiffs hereby repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

10.     The Subject Property is identified on the tax maps of the Township of Cedar Grove as Block 297, Lots 3 and 4, and is commonly known as 55 Commerce Road, Cedar Grove, New Jersey.

11.     By deed dated May 7, 1948, Wilberton Development Corporation purchased two large tracts of vacant land, which included the parcels now comprising the Subject Property.

12.     From 1948 through 1964, the parcels that ended up becoming the Subject Property were leased to Rich-Tex, Inc., Roysons, Inc., Fabritate Inc., and Richco, Inc (collectively, "Ritchie Companies").

13.     During the Ritchie Companies tenancy, the premises were utilized to manufacture self-adhesive wallpaper and other wallpaper.

14.     During the Ritchie Companies tenancy, Roy S. Ritchie and Roy W. Ritchie, among others, were shareholders and/or owners of the Ritchie Companies.

15.     Between March 13, 1952 through May 10, 1967, Roy S. Ritchie and Roy W. Ritchie, partners trading as Ritchie Realty Company, purchased the lots that became part of the Subject Property.

16.     By lease dated September 30, 1964, Ritchie Realty Company leased to Firestone Tire & Rubber Company properties described as 42-46 Commerce Road, 50 Commerce Road, and 49 Commerce Road, Cedar Grove, New Jersey.

17.     Between October 28, 1965 and May 10, 1967, Cargille Sons purchased the Subject Property from Ritchie Realty Company.

18.     In 1971, Cargille Sons purchased the remainder of the Subject Property, from Wilberton Development Corporation.

19.     In 1964, Firestone Tire & Rubber Company ("Firestone") acquired substantially all the assets of the Ritchie Companies.

20.     In 1980, Defendant Occidental acquired the Firestone Plastics Company, a division of the Firestone Tire & Rubber Company.

21.     Upon information and belief, the Ritchie Companies assets were a part of the Firestone Plastics Company, a division of the Firestone Tire & Rubber Company.

22.     In 1988, Bridgestone Corporation acquired Firestone.

23.     Defendant Bridgestone is the current successor-in-interest to Firestone.

24.     In 1998, five underground storage tanks ("USTs") were removed from the Property by JM Sorge, Inc. ("JM Sorge").

25.     Four of the tanks contained glue and solvents associated with wallpaper manufacturing. The fifth tank was used to store heating oil.

26.     During the excavation of the USTs, JM Sorge encountered wallpaper in shallow soils adjacent to the UST excavation.

27.     Plaintiffs have never used the USTs and never produced or sold wallpaper, mastic/caulking, rubber, and adhesive materials.

28.     The Ritchie Companies produced and/or sold self-adhesive wallpapers, wallpapers, and other products, and used the USTs.

29.     On April 19, 1999, the New Jersey Department of Environmental Protection ("NJDEP") issued a No Further Action ("NFA") letter with respect to the USTs.

30.     Material removed from the USTs containing adhesives was tested and revealed a content of 68.5 mg/kg of polychlorinated biphenyls ("PCBs") by weight.

31.     In 2015, JM Sorge performed environmental investigations on the soil and concrete of the building interior and property exterior.

32.     High concentrations of PCB contamination was found along the west and southwest side of the building, near the location of the former USTs.

33.     A subsequent 2016 sampling performed in the southwest corner of the building revealed PCB contamination at 1,200 ppm located 6.0 to 6.5 feet below the exterior surface.

34.     From 2015 through 2019, JM Sorge conducted further site investigation to delineate the extent of buried wallpaper and related debris around the Subject Property.

35.     On March 23, 2016 and May 12, 2016, wallpaper, rubber material, and other debris were encountered in test pit excavations on the Subject Property.

36.     On August 26, 2017, JM Sorge excavated three additional test pits, which located buried wallpaper, plastic material, plastic sheeting, and adhesive material, between one and six feet below grade.

37.     Samples from the August 26, 2017 test pits containing buried wallpaper and related debris identified PCB concentrations exceeding the standard, including up to 1,745 ppm.

38.     Additional excavations to investigate the extent of buried wallpaper and related debris was done in May 2018, August 2018, and February 2019.

39.     Sampling of the buried wallpaper and related debris identified PCBs at concentrations up to 5,650 ppm, substantially exceeding federal remediation standards.

40.     In July 2019, JM Sorge prepared the Preliminary Assessment Report, Site Investigation Report, and Remediation Investigation Report.

41.     On September 18, 2019, JM Sorge submitted a Self-Implementing On-Site Clean Up and Disposal Plan ("Self-Implementing Clean-Up Plan") in accordance with 40 CFR § 761.61 for approval by the United States Environmental Protection Agency ("EPA").

42.     The Self-Implementing Clean-Up Plan proposed the removal and proper disposal of all soil, buried wallpaper and related debris, and concrete impacted with PCBs.

43.     The Self-Implementing Clean-Up Plan also proposed a cap and deed notice for certain areas of remediation, in accordance with 40 CFR 761.61(a)(4)(i)A, 761.61(a)(7), 761.30(p), and New Jersey Department of Environmental Protection ("NJDEP") regulations.

44.    By letter dated January 9, 2020, the EPA approved the Self-Implementing Clean-Up Plan. The benefit of this approval is that it significantly reduced the cost of site remediation.

45.    In January 2020, JM Sorge submitted a Remedial Action Workplan ("RAW") to effectuate the approved Self-Implementing Clean-Up Plan to the NJDEP for approval.

46.    From January 2020 through April 2020, JM Sorge worked with the NJDEP to address certain technical questions regarding the proposed RAW.

47.    NJDEP subsequently approved the RAW, and Plaintiffs were able to commence the remediation in 2020.

48.    As of the date of this complaint, the remediation is currently ongoing.

## COUNT I – COMPREHENSIVE ENVIRONMENTAL RESPONSE COMPENSATION AND LIABILITY ACT, 42 U.S.C. 9601, ET SEQ. (SECTION 107)

49.    Plaintiffs repeat and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

50.    Pursuant to CERCLA, "the owner and operator of a vessel or facility" is strictly liable under CERCLA. 42 U.S.C. 9607(a).

51.    Pursuant to CERCLA, "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such substances were disposed of" is strictly liable under CERCLA. 42 U.S.C. 9607(a).

52.    Pursuant to CERCLA, "any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances" is strictly liable under CERCLA. 42 U.S.C. 9607(a).

53.     Pursuant to CERCLA, "any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance" is strictly liable under CERCLA. 42 U.S.C. 9607(a).

54.     A person liable under CERCLA shall be liable for any necessary costs of responses incurred by any other person consistent with the national contingency plan. 42 U.S.C. 9607(a).

55.     The Ritchie Companies and/or Firestone were the owner and operator of the facility from 1948 through 1964.

56.     The Ritchie Companies and/or Firestone were the owner and operator of the facility at the time of the disposal of hazardous waste.

57.     The Ritchie Companies and/or Firestone arranged for the disposal of hazardous substances at the Subject Property.

58.     The Ritchie Companies and/or Firestone accepted hazardous substances for disposal at the Subject Property, which caused contamination and forced Plaintiff to incur remediation costs.

59.     Plaintiffs have never used the USTs and never produced or sold wallpaper, mastic/caulking, rubber, and adhesive materials.

60.     By way of its corporate successor status to the Ritchie Companies and/or Firestone, Defendant Bridgestone and/or Defendant Occidental are liable under CERCLA and liable to Plaintiffs for the costs of remediation.

**WHEREFORE**, Plaintiffs demand judgment against Defendants and for an Order as follows:

   a. Directing Defendants to pay any and all necessary costs incurred by Plaintiffs in the investigation and remediation of the Site;

b. Compelling Defendants to indemnify and hold harmless Plaintiff for any and all costs associated with the investigation and remediation of the Site;

c. Granting compensatory damages;

d. Awarding all costs of suit and attorneys' fees; and

e. Awarding such other relief as the Court deems just and equitable.

## COUNT II – CONTRIBUTION UNDER NEW JERSEY SPILL COMPENSATION AND CONTROL ACT, N.J.S.A. 58:10-23.11, ET SEQ.

61.     Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

62.     PCBs are "hazardous substances" pursuant to the Spill Act, N.J.S.A. 58:10-23.11b.

63.     Pursuant to the Spill Act, "any person who has discharged a hazardous substance, or is any way responsible for any hazardous substances, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred." N.J.S.A. 58:10-23.11g(c)(1).

64.     The Spill Act provides a person who cleans up and removes a discharge of a hazardous substance "a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance." N.J.S.A. 58:10-23.11f(a)(2)(a).

65.     Pursuant to the Spill Act, "[i]n an action for contribution, the contribution plaintiffs need prove only that a discharge occurred for which the contribution defendant or defendants are liable pursuant to the provisions of [N.J.S.A. 58:10-23.11g], and the contribution defendant shall have only the defenses to liability available to parties pursuant to [N.J.S.A. 58:10-23.11g]." N.J.S.A. 58:10-23.11f(a)(2)(a).

66.     Pursuant to the Spill Act, Courts may allocate costs of the cleanup and removal of hazardous substances amongst liable persons using such equitable factors as the Court determines appropriate.

67.     Plaintiffs are a "person" pursuant to the New Jersey Spill Compensation and Control Act ("Spill Act"), N.J.S.A. 58:10-23.11b.

68.     The Ritchie Companies caused PCBs to discharge on the Subject Property through the use of adhesives and other chemical compounds to produce vinyl plastic, wall coverings and other products.

69.     Upon information and belief, Firestone engaged in operations on the Subject Property which caused PCBs to discharge thereon.

70.     By way of its corporate successor status to the Ritchie Companies and/or Firestone, Defendant Bridgestone and/or Defendant Occidental is a discharger, "person," and/or "person responsible for conducting the remediation" pursuant to the Spill Act, N.J.S.A. 58:10-23.11b.

71.     As a result of the operations described in the preceding paragraphs, the defendants are "responsible" for the PCB contamination on the Property under the Spill Act and are thus liable for remediation contribution.

**WHEREFORE**, Plaintiffs demand judgment against Defendants and for an Order as follows:

    a.  Compelling Defendants to fund the investigation and remediation of the Site;
    b.  Directing Defendants to pay all of the costs, attorneys' fees and costs, and expert and consultant fees and costs incurred by Plaintiffs in the investigation and remediation of the Site;
    c.  Compelling Defendants to indemnify and hold harmless Plaintiffs for any and all costs associated with the investigation and remediation of the Site;
    d.  Granting compensatory damages;
    e.  Awarding all costs of suit and attorneys' fees; and
    f.  Awarding such other relief as the Court deems just and equitable.

## COUNT III – NEW JERSEY ENVIRONMENTAL RIGHTS ACT, N.J.S.A. 2A:35A-1, ET SEQ.

72.     Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

73.     Plaintiffs are a "person" pursuant to the New Jersey Environmental Rights Act ("ERA"). N.J.S.A. 2A:35A-3(a).

74.     Defendant Bridgestone is a "person" pursuant to the ERA. N.J.S.A. 2A:35A-3(a).

75.     Defendant Occidental is a "person" pursuant to the ERA. N.J.S.A. 2A:35A-3(a).

76.     The Spill Act is a statute designed to prevent or minimize pollution, impairment or destruction of the environment.

77.     PCB contamination on the Property is "pollution, impairment or destruction of the environment" pursuant to the ERA. N.J.S.A. 2A:35A-3(b).

78.     The ERA permits "[a]ny person [to] commence a civil action in a court of competent jurisdiction against any other person alleged to be in violation of any statute, regulation or ordinance which is designed to prevent or minimize pollution, impairment or destruction of the environment." N.J.S.A. 2A:35A-4(a).

79.     The ERA allows the Courts to grant permanent equitable relief, "including the imposition of such conditions as may be necessary to protect the environment." N.J.S.A. 2A:35A-6.

80.     Prior to commencing an action, the moving person shall, "at least 30 days prior to the commencement thereof, direct a written notice of such intention by certified mail, to the Attorney General, the Department of Environmental Protection, the governing body of the municipality in which the alleged conduct has, or is likely to occur, and to the intended defendant." N.J.S.A. 2A:35A-11.

81.     Plaintiffs duly noticed Defendant Bridgestone of its intent to file this lawsuit under the ERA, in accordance with N.J.S.A. 2A:35A-11.

82.     Plaintiffs duly noticed Defendant Occidental of its intent to file this lawsuit under the ERA, in accordance with N.J.S.A. 2A:35A-11.

83.     As noticed in the above-referenced writings, Plaintiffs commences this action against Defendants for their violation of the Spill Act, as set forth in this Complaint.

84.     Pursuant to the ERA, Plaintiffs requests this Court to compel Defendants to comply with the Spill Act and any other such conditions that are necessary to protect the environment.

**WHEREFORE**, Plaintiffs demand judgment against Defendants and for an Order as follows:

    a.  Compelling Defendants to investigate and remediate the Site;
    b.  Compelling Defendants to indemnify and hold harmless Plaintiffs for any and all costs associated with the investigation and remediation of the Site;
    c.  Awarding counsel and expert witness fees pursuant to N.J.S.A. 2A:35A-10; and
    d.  Awarding such other relief as the Court deems just and equitable.

## COUNT IV – NEGLIGENCE

85.     Plaintiffs repeat and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

86.     Defendant Bridgestone and/or Defendant Occidental are the corporate successors to the Ritchie Companies.

87.     The Ritchie Companies had a duty of care to properly handle hazardous substances at the Subject Property.

88.     The Ritchie Companies. had a duty of care to properly dispose of hazardous waste at the Subject Property.

89.     The Ritchie Companies had a duty of care to properly dispose of solid waste at the Subject Property.

11

90.     The Ritchie Companies breached this duty by discharging and burying the Buried

Material in the ground.

91.     The Ritchie Companies breached this duty by allowing PCB contaminated

materials and other hazardous waste to contaminate the Subject Property.

92.     This breach was the direct cause of the contamination at the Property and has

required an environmental remediation to be conducted at the Subject Property.

93.     As a result of the breaches of duty, Plaintiffs have incurred damages including but

not limited to the cost of remediation, consequential damages, and diminution of the value of the

Subject Property.

94.     The remedial action for the PCB contamination that was approved by the United

States Environmental Protection Agency and the New Jersey Department of Environmental

Protection has PCB contamination remaining in place in certain locations throughout the Property

through the use of engineering and institutional controls, thereby causing a diminution of value of

the Property.

95.     Defendants Bridgestone and/or Occidental as the corporate successors to the

Ritchie Companies, are liable for the negligence of their predecessors.

        **WHEREFORE**, Plaintiffs demand judgment against Defendants and for an Order as

follows:

    a.  Awarding compensatory and consequential damages, including diminution of
        value of the Property, together with lawful interest;
    b.  Awarding attorney's fees and costs of suit; and
    c.  Awarding all such other relief as the Court deems just and equitable.

                                        **LIEBERMAN BLECHER & SINKEVICH, P.C.**
                                        *Attorneys for Plaintiff, Cargille Sons*

Dated: March 17, 2022                   /s/ Stuart J. Lieberman_____
                                        Stuart J. Lieberman, Esq.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of all issues in this action.

## CERTIFICATION PURSUANT TO LOCAL RULE 11.2

Pursuant to Local Civil Rule 11.2, the undersigned hereby certify that the matter in

controversy is currently the subject of a pending state court case on state law claims.

**LIEBERMAN BLECHER & SINKEVICH, P.C.**
*Attorneys for Plaintiff, Cargille Sons*


Dated: March 17, 2022                    /s/ Stuart J. Lieberman_____
                                         Stuart J. Lieberman, Esq.